***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Gillen and the briefs and arguments of the parties. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, or rehear the parties or their representatives, and having reviewed the competent evidence of record, the Full Commission adopts the Opinion and Award of Deputy Commissioner Gillen with modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner and in the Pretrial Agreement as: *Page 2 
 STIPULATIONS
1. The parties are properly before the Industrial Commission, and the Industrial Commission has jurisdiction of the parties and the subject matter.
2. The parties are bound by and subject to the North Carolina Workers' Compensation Act.
3. All parties have been properly designated and there is no question as to misjoinder or nonjoinder of the parties.
4. The carrier on the risk for defendant-employer in this claim was Risk Management Services.
5. Plaintiff sustained an admittedly compensable injury to his right knee on April 5, 2003, while employed by defendant-employer.
6. Plaintiff alleges to have also sustained in this accident a compensable injury to his back on April 5, 2003, when he slipped on water on the floor, banging his right knee cap on the concrete, catching his right thigh on a produce rack, and hyperextending his back.
7. Defendants initially denied the extent of the compensable consequences to the right knee injury but later accepted the right knee following mediation between the parties and authorized a total knee replacement.
8. Defendants have continued to deny the portion of the claim related to plaintiff's back injury.
9. An employment relationship existed between plaintiff and defendant-employer on April 5, 2003.
10. Plaintiff's average weekly wage is $628.50, which yields a compensation rate of $419.00. *Page 3 
11. Plaintiff has been receiving temporary total disability benefits or the equivalent since April 5, 2003, and these benefits are current.
12. The parties certify that all pretrial discovery has been completed and that all relevant documents have been exchanged.
13. A mediation was held but impassed on February 27, 2008.
14. Plaintiff has requested medical treatment by an orthopedist to evaluate and/or treat his back injury, but defendants have not authorized an evaluation or treatment.
 ***********
The following were entered into evidence as:
 STIPULATED EXHIBITS
1. The Pretrial Agreement, marked as stipulated exhibit 1.
2. A collection of documents including plaintiff's medical records, the Industrial Commission Forms filed in this matter, personnel records, and discovery exchanged in this matter, collectively paginated 1-378 and marked as stipulated exhibit 2.
 ADDITIONAL EXHIBITS
1. Medical records submitted by Plaintiff before Deputy Commissioner Gillen as pages 1.0004B through 1.0006B and included in the record of evidence before the Full Commission pursuant to the April 27, 2009, Order of Commissioner Bernadine S. Ballance.
 DEPOSITIONS
1. Jeffrey Daily, M.D., taken September 30, 2008.
2. David Norris DePuy, M.D., taken October 14, 2008.
 * * * * * * * * * * * *Page 4 
Based upon all of the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff was born on December 30, 1951, and is a high-school graduate.
2. Plaintiff worked for defendant-employer in the 1970s and 1980s, spending most of this time working as a perishable food manager. Plaintiff resigned in 1989 in order to secure a nine-to-five job. Plaintiff began a second stint working for defendant-employer in 1999, again working as a perishable food manager.
3. As a perishable food manager, plaintiff was required to lift and stack produce all day. As part of his duties, plaintiff unloaded truckloads of produce and placed the produce in a walk-in cooler. In doing so, plaintiff had to unload the produce onto a pallet manually. The heaviest individual items plaintiff would lift at one time were bales of potatoes, which weighed one hundred pounds per two bales. Plaintiff was also required to push or pull the full pallets up to 500 feet to the cooler. The full pallets weighed as much as 2,000 pounds.
4. The job required lifting from the floor and overhead. It also required constant bending, squatting, stooping, and kneeling. Prior to April 5, 2003, plaintiff had an excellent attendance record and was able to perform his job fully, often working double shifts.
5. Plaintiff suffered a compensable injury by accident on April 5, 2003, when he slipped in water on the concrete floor of the produce cooler while reaching up to obtain a particular salad item for a customer. Plaintiff's left leg went straight out in front of him when he fell, and his right leg bent beneath him. The weight of plaintiff's body landed on the back of his right lower leg and plaintiff's back struck the floor.
6. Plaintiff underwent a right total knee arthroplasty on June 9, 2003. *Page 5 
7. Defendants initially denied the compensability of this claim in its entirety, but eventually filed a Form 60 dated September 24, 2004, admitting the compensability of the knee injury.
8. Plaintiff has been out of work since April 6, 2003, and has not returned to work. Plaintiff continues to receive ongoing temporary total disability benefits pursuant to the September 24, 2004, Form 60.
9. Plaintiff testified at the hearing before the Deputy Commissioner that he has had back pain ever since the April 5, 2003, injury. Plaintiff further testified that he told Dr. Jeffery Daily about his back pain at the appointments immediately after the fall, and that Dr. Daily told plaintiff that plaintiff's back would be treated after his knee injury was treated.
10. Plaintiff's Form 18, dated May 14, 2003, specifies ". . . and hyperextending his back" when describing the April 5, 2003, injury. Likewise, the Form 33 dated October 2, 2003, identifies "Right knee, back" as the body parts plaintiff injured on April 5, 2003.
11. On September 17, 2003, plaintiff was seen by Dr. Daily. In the medical note generated from this visit, Dr. Daily indicates that plaintiff had experienced recent back symptoms as a result of bending during the rehabilitation of plaintiff's right knee. Dr. Daily assigned plaintiff restrictions of no lifting greater than ten pounds and no bending or squatting. In this note Dr. Daily specifically documented that "certainly the restrictions and orders for his back would go hand in hand with his knee."
12. Plaintiff underwent a Functional Capacity Evaluation (hereinafter "FCE") on December 21, 2004. The FCE report noted "full physical effort on [plaintiff's] behalf" and found plaintiff's "subjective reports of pain and associated disability to be both reasonable and reliable." In the *Page 6 
"Summary of Findings" section of the FCE report, the evaluator concluded that plaintiff "demonstrated the ability to work at less than sedentary physical demand level."
13. Dr. DuPuy first saw plaintiff on November 22, 2005. The note from this visit documents that plaintiff "presents with the complaint of pain in his lower back and left leg since an injury he sustained in April of 2003."
14. Dr. Daily testified that a back hyperextension injury in a person with degenerative disc disease can cause permanent back damage. However, Dr. Daily further testified that he did not believe that had happened to plaintiff in this case. Dr. Daily acknowledged that he does not treat backs as a part of his regular practice.
15. Dr. DuPuy testified that the type of fall that plaintiff experienced on April 5, 2003, would hyperextend plaintiff's back. Dr. DePuy further testified, based on the hypothetical fact situation that plaintiff had experienced back pain since the April 5, 2003, injury, that plaintiff's April 5, 2003, fall caused an aggravation of an existing arthritic back condition, and that plaintiff's back pain was therefore more likely than not the result of the April 5, 2003, fall. Dr. DePuy indicated that an MRI was required to more fully explore plaintiff's condition.
16. The Full Commission finds plaintiff's testimony concerning his back pain to be credible. Based on the greater weight of the evidence, plaintiff has experienced ongoing back pain since April 5, 2003.
17. Having considered the testimony of Dr. Dailey and Dr. DuPuy, and given their respective expertise with back injuries, the Full Commission gives greater weight to the testimony and expert opinions of Dr. DuPuy with regard to plaintiff's back condition. *Page 7 
18. On April 5, 2003, plaintiff fell and suffered a compensable injury by accident to his back that arose out of and in the course of his employment with defendant-employer. The fall constituted an interruption of plaintiff's normal work routine and the introduction thereby of conditions likely to result in unexpected consequences.
19. The credible medical and vocational evidence of record shows that, as a result of his April 5, 2003, injury, taking into account both his physical and vocational limitations, plaintiff has been totally disabled and unable to earn any wages in any employment from April 6, 2003, and continuing.
 ***********
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. In order to establish a compensable back injury, plaintiff must prove that the disabling back injury arose out of and in the course of the employment and was the direct result of either an injury by accident or a specific traumatic incident of the work assigned. N.C. Gen. Stat. § 97-2(6);Richards v. Town of Valdese, 92 N.C. App. 222, 224, 374 S.E.2d 116, 118
(1988), disc. review denied, 324 N.C. 337, 378 S.E.2d 799 (1989). Our courts have held that an injury is also compensable if it materially accelerates or aggravates a preexisting condition, and proximately contributes to disability. N.C. Gen. Stat. § 97-2; Brown v. Family DollarDistrib. Ctr. 129 N.C. App. 361, 364, 499 S.E.2d 197, 199 (1998).
2. On April 5, 2003, when he fell after slipping in the cooler while reaching up for a salad product, plaintiff suffered a compensable injury by accident to his back that arose out of and in the course of his employment with defendant-employer. The fall constituted an interruption of plaintiff's normal work routine and the introduction thereby of conditions likely to result in unexpected *Page 8 
consequences. N.C. Gen. Stat. § 97-2(6); Harding v. Thomas Howard Co.,256 N.C. 427, 429, 124 S.E.2d 109, 111 (1962). This compensable injury by accident caused plaintiff's back condition or materially accelerated or aggravated a preexisting non-disabling back condition. N.C. Gen. Stat. §97-2(6); Brown v. Family Dollar Distrib. Ctr. 129 N.C. App. 361, 364,499 S.E.2d 197, 199 (1998).
3. Given the credible medical and vocational evidence of record, and plaintiff's compensable accident of April 5, 2003, plaintiff has been temporarily totally disabled and is entitled to temporary total disability compensation at the rate of $419.00 per week for the period from April 6, 2003, and continuing until plaintiff returns to work or further order of the Commission. N.C. Gen. Stat. § 97-29; Russell v.Lowes Prod. Distribution, 108 N.C. App. 762, 765, 425 S.E.2d 454, 457
(1993).
4. Subject to the provisions of N.C. Gen. Stat. § 97-25.1, plaintiff is entitled to have defendants provide all medical treatment, incurred or to be incurred, necessitated by the April 5, 2003, compensable back injury when bills for the same have been approved pursuant to Industrial Commission procedures. This treatment shall include, but is not limited to, the performance of an MRI on plaintiff's back under the direction of Dr. DuPuy. N.C. Gen. Stat. §§ 97-25, 97-25.1.
5. Regarding this medical treatment, the North Carolina Workers' Compensation Act gives the Industrial Commission the power to "order such further [medical] treatments as may in the discretion of the Commission be necessary," with the cost to be borne by the defendants. Furthermore, the Industrial Commission may "at any time . . . order a change in treatment and designate other treatment suggested by the injured employee. . . ." N.C. Gen. Stat. § 97-25. Given the facts of this case, Dr. DuPuy is the best physician to direct the medical treatment of plaintiff's back. N.C. Gen. Stat. § 97-25. *Page 9 
6. The parties stipulated that plaintiff's average weekly wage was $628.50, which yields a compensation rate of $419.00. N.C. Gen. Stat. § 97-2(5).
 ***********
Based upon the foregoing stipulations, findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Given plaintiff's compensable injury of April 5, 2003, as well as the credible medical and vocational evidence of record, defendants shall continue to pay plaintiff, subject to the attorney's fee approved below, temporary total disability compensation at a rate of $419.00 per week for the period from April 6, 2003, and continuing until plaintiff returns to work or further order of the Commission. Any payments that have accrued shall be paid in a lump sum, subject to the attorney's fee approved below.
2. Defendants shall pay all medical expenses incurred or to be incurred as a result of plaintiff's April 5, 2003, compensable back injury when bills for the same have been approved pursuant to Industrial Commission procedures, subject to the provisions of N.C. Gen. Stat. § 97-25.1. This treatment shall include, but is not limited to, the performance of an MRI on plaintiff's back under the direction of Dr. DuPuy. Going forward, the medical treatment of plaintiff's back shall be directed by Dr. DuPuy.
3. A reasonable attorney fee of twenty-five percent of the compensation due plaintiff under paragraph 1 of this Award is approved for plaintiff's counsel and shall be paid as follows: Twenty-five percent of any lump sums due plaintiff shall be deducted and paid directly to plaintiff's counsel. Thereafter, plaintiff's attorney shall receive every fourth compensation check due plaintiff. *Page 10 
4. Defendants shall pay the costs.
This the 29th day of May 2009. S/_____________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/_____________ BERNADINE S. BALLANCE COMMISSIONER
 S/_____________ STACI T. MEYER COMMISSIONER *Page 1